## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| KENDALL STATE BANK, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:10-cv-02617 KHV/DJW |
| | ) | |
| ARCHWAY INSURANCE SERVICES, | ) | |
| LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### AMENDED COMPLAINT

Kendall State Bank, Bank of Commerce and Trust Company, First United Bank and Trust, Garden City State Bank, Peabody State Bank, Quivira Capital, LLC, and Kelly Drouillard, for their Amended Complaint against Archway Insurance Services, LLC, Nevada Investment Partners, LLC, and Union One Insurance Agency, LLC, state as follows:

### THE PARTIES, JURISDICTION, AND VENUE

1.      Kendall State Bank is a banking corporation chartered under the laws of Kansas whose principal place of business is in Valley Falls, Kansas.

2.      Bank of Commerce and Trust Company is a banking corporation chartered under the laws of Kansas whose principal place of business is in Wellington, Kansas.

3.      First United Bank and Trust is a banking corporation chartered under the laws of Maryland whose principal place of business is in Oakland, Maryland.

4.      Garden City State Bank is a banking corporation chartered under the laws of Kansas whose principal place of business is in Garden City, Kansas.

5.      Peabody State Bank is a banking corporation chartered under the laws of Kansas whose principal place of business is in Peabody, Kansas.

WA 2562268.4

6.     Quivira Capital, LLC is a limited liability company organized under the laws of Kansas whose principal place of business is in Lenexa, Kansas.

7.     Two members own all the membership interest in Quivira Capital, LLC: (1) J.C. Jones, LLC and (2) Drouillard Capital, LLC. Jim Jones is a Kansas citizen and resident and owns all the membership interest in J.C. Jones, LLC. Kelly Drouillard and her husband are both Kansas citizens and residents and they own all the membership interest in Drouillard Capital, LLC.

8.     Kelly Drouillard is an individual who resides in Kansas.

9.     On information and belief, Archway Insurance Services, LLC ("Archway") is a limited liability company organized under the laws of Pennsylvania whose principal place of business is in Fort Washington, Pennsylvania.

10.     On information and belief, Nevada Investment Partners, LLC ("NIP") is a limited liability company organized under the laws of Pennsylvania whose principal place of business is in Fort Washington, Pennsylvania.

11.     On information and belief, Union One Insurance Group, LLC ("Union One," collectively with Archway and NIP, "Defendants") is a limited liability company organized under the laws of Pennsylvania whose principal place of business is in Fort Washington, Pennsylvania.

12.     None of the Defendants are, or were at the time when Plaintiffs filed this action, citizens of either Kansas or Maryland.

13.     At the time when this suit was filed, the membership interests in Archway were owned entirely by five citizens of Pennsylvania (collectively "Archway Members"): (1) Hugh James Agnew; (2) Eric Kurtis Bossard; (3) Frederick Ike Milbert; (4) Randall Paul Siko; and (5) Debbie Agnew. Each of those five Archway Members is and was a resident and citizen of Pennsylvania.

WA 2562268.4

14.     At the time when this suit was filed, the membership interests in NIP were owned entirely by four citizens of Pennsylvania (collectively "NIP Members"): (1) Debbie Agnew; (2) Eric Kurtis Bossard; (3) Frederick I. Milbert; and (4) Randall Paul Siko.   Each of those four NIP Members is and was a resident and citizen of Pennsylvania.

15.     At the time when this suit was filed, the membership interests in Union One were also owned entirely by four citizens of Pennsylvania (collectively "Union One Members"): (1) Debbie Agnew; (2) Eric Kurtis Bossard; (3) Frederick Ike Milbert; and (4) Randall Paul Siko.  Each of those four Union One Members is and was a resident and citizen of Pennsylvania.

16.     The Court has subject-matter jurisdiction over this action because it is between citizens of different states and the amount in controversy exceeds $75,000 (exclusive of costs and interest), pursuant to 28 U.S.C. § 1332.

17.     The Court has subject-matter jurisdiction over Count II of this action pursuant to 28 U.S.C. § 1331 as Count II seeks declaratory relief against certain claims asserted against Plaintiffs under the Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1961 et seq. Section 1964(c), 18 U.S.C. § 1964(c), expressly confers federal subject matter jurisdiction over such claims in federal district courts.

18.     This Court maintains supplemental jurisdiction over claims arising under state law pursuant to 28 U.S.C. § 1367 (a), Federal Rule of Civil Procedure 18(a), and the principles of pendent jurisdiction since the claims arising under state law are so related to claims in the action over which the court has original jurisdiction, so that all claims are part of the same case or controversy.

WA 2562268.4

19.     The Court has personal jurisdiction over Archway because it transacted business in Kansas related to the loan and related documents at issue in this action, including (but not limited to) the negotiation of that loan.

20.     The Court has personal jurisdiction over NIP and Union One because (1) in paragraph 16 of the loan agreement governing the loan at issue in this action, those defendants "irrevocably and unconditionally" submitted to the jurisdiction of this Court in "any action" arising from or relating to that loan, and (2) this action arises from those defendants' formation of one or more contracts and transaction of business in Kansas.

21.     The Court is a proper venue for resolving this dispute pursuant to 28 U.S.C. § 1391(a), because (1) paragraph 16 of the loan agreement governing the loan at issue in this action provides that the Court would be a proper venue for resolving "any dispute" arising from or relating to that loan, and (2) a substantial part of the events giving rise to this action occurred in Kansas.

## GENERAL ALLEGATIONS

### Aleritas Originated a Loan to Borrowers

22.     Aleritas Capital Corporation, formerly known as Brooke Credit Corporation ("Aleritas"), was a finance company that specialized in originating loans to insurance agencies.

23.     To fund its operations, Aleritas sold interests in most of the loans that it originated, primarily by (a) selling pools of loans to special-purpose entities that issued debt securities secured by payments made on the pooled loans and related assets, or (b) selling individual loans, or portions of those loans, directly to other lenders.

24.     In both cases, Aleritas retained little or no interest in the loans that it originated.

WA 2562268.4

25.     Aleritas typically retained some authority over the loans that it sold directly to other lenders, administering and servicing those loans for a fee.

26.     On September 28, 2007, Aleritas made a loan of $2,924,125 ("Loan") to Union One Insurance Agency, LLC and Nevada Investment Partners, LLC (collectively, "Borrowers"), along with an affiliated company, The Harris Agency, LLC, pursuant to a loan agreement and addendum (collectively, "Loan Agreement") and a promissory note, security agreement, and other agreements (collectively with the Loan Agreement, "Loan Documents").

27.     A copy of the Loan Documents is attached to this Complaint collectively as **Exhibit A** and is incorporated by reference.

28.     In paragraph 6 of the Loan Agreement, Borrowers agreed that Aleritas could sell interests in the Loan to other lenders:

> Borrower agrees and consents to Lender's sale or transfer, whether now or later, of the Loan, including, without limitation: Lender's sale or transfer of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. . . . Borrower additionally waives any and all notices of sale of participation interests. . . .  Borrower also agrees that the . . . purchasers of any participation interests may or will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. . . .

29.     Similarly, paragraph 6 of the Loan Agreement characterizes any sale of a participatory interest in the Loan by Alertia's standard participation agreement as "an assignment" of the Loan.  Thus, paragraph 6 of the Loan Agreement evidences the intent of Aleritas and Borrowers that lenders who participated in the Loan would be absolute owners of the interests they purchased in the Loan and assignees of the Loan.

30.     In that same provision of the Loan Agreement, Borrowers also waived their rights to seek any offsets or assert any counterclaims against lenders participating in the Loan, and agreed that those lenders could protect their interests in the Loan and enforce Borrowers' obligations under the

WA 2562268.4

Loan Agreement, even if another party holding an interest in the Loan, such as Aleritas, became

insolvent:

> Borrower further waives all rights of offset or counterclaim that it may have now or
> later against . . . any purchaser of such a participation interest and unconditionally
> agrees that such . . . purchaser may enforce Borrower's obligations under the Loan
> irrespective of the failure or insolvency of any holder of any interest in the Loan.
> Borrower further agrees that the . . . purchaser of any such participation interests may
> enforce its interests irrespective of any personal claims or defenses that Borrower
> may have against Lender.

31.   Additionally, in paragraph 6 of the Loan Agreement, Borrowers agreed that lenders

participating in the Loan could protect those interests, regardless of any claims that Borrowers might

assert against Aleritas:

> Borrower further agrees that the . . . purchaser of any such participation interests may
> enforce its interests irrespective of any personal claims or defenses that Borrower
> may have against Lender.

32.   Moreover, in paragraph 6 of the Loan Agreement, Borrowers agreed that their

consent was not necessary for any assignment of the Loan made due to the occurrence of any of the

qualifying events specified by Aleritas's standard participation agreement.

33.   Thus, paragraph 6 of the Loan Agreement also evidences the intent of Aleritas and

Borrowers to confer benefits on lenders participating in the Loan.

34.   Paragraph 6 of the Loan Agreement also evidences the intent of Aleritas to give

lenders participating in the Loan the benefit of Borrowers' promised performance of their obligations

under the Loan Documents.

35.   Paragraph 16 of the Loan Agreement states that the prevailing party in any lawsuit

"brought with respect to the Agreement" may recover its costs incurred with respect to the action,

including reasonable attorneys' fees.

WA 2562268 4

## Aleritas Sold Parts of the Loan to Participating Lenders

36.     Shortly after Aleritas made the Loan to Borrowers, it sold interests in the Loan to Kendall State Bank, Bank of Commerce and Trust Company, First United Bank and Trust, Garden City State Bank, Peabody State Bank (collectively, "Participants"), pursuant to substantially similar agreements.

37.     Those agreements expressly state that the Participants "will be considered for all purposes the legal and equitable owner" of their interests in the Loan.

38.     Those agreements also state that the Participants purchased an interest in the instruments evidencing Borrowers' obligations relating to the Loan and the security interests in the collateral for the Loan, as well as other documents related to the Loan.

39.     Those agreements also state that each of the Participants' purchases were "a sale of a percentage ownership interest in the Loan."

40.     Those agreements permitted Aleritas to administer the Loan on behalf of the Participants for a fee.  In its capacity as the administrator of the Loan, Aleritas had the power to "make all decisions" about the servicing of the Loan, including decisions about accelerating the maturity date of the Loan, foreclosing on collateral securing the Loan, acquiring additional security for the Loan, and pursuing deficiency judgments against Borrowers.

41.     But, those agreements gave the Participants the right to replace Aleritas as the administrator of the Loan in certain circumstances and transfer the administration of the Loan to one of the Participants if Aleritas breached those agreements or committed any act of insolvency, or if any of several other "qualifying events" occurred.

42.     Those agreements do not require the Participants to exercise that right to administer the Loan within a specific time from the occurrence of a qualifying event.

WA 2562268.4

43.     The Participants actually and reasonably relied on those provisions of the participation agreements when they purchased their interests in the Loan, understanding that the Participants could assume the administration of the Loan if Aleritas breached its agreements or became insolvent.

44.     The Participants also actually and reasonably relied on the protections afforded by the Loan Agreement to lenders participating in the Loan when it purchased its interest in the Loan.

### Kendall State Bank Assumed the Administration of the Loan

45.     Aleritas originally administered and serviced the Loan, collecting a fee for doing so.

46.     In about August 2008, Aleritas breached its agreements with the Participants by failing to remit one or more payments by Borrowers on the Loan to one or more of the Participants.

47.     Aleritas's breach of its agreements with the Participants constituted a "qualifying event."

48.     In early October 2008, a management consulting firm that Aleritas had hired to evaluate its operations determined that Aleritas was insolvent.  On about October 20, 2008, Aleritas began liquidating its remaining assets and concluding its operations.

49.     Aleritas's insolvency also constituted a "qualifying event."

50.     Exercising their rights under the agreements governing their purchases of interests in the Loan, the Participants removed Aleritas as the administrator of the Loan and transferred the administration of the Loan to Kendall State Bank.

51.     Since that time, Kendall State Bank has exercised the powers granted to the administrator of the Loan by the participation agreements.

WA 2562268.4

52.     Neither Aleritas nor any of the other lenders participating in the Loan have challenged Kendall State Bank's right to administer the Loan or objected to Kendall State Bank's exercise of that authority.

### Participants are Entitled to Enforce the Loan Documents Against Borrowers

53.     Kendall State Bank may enforce the Loan Documents against Borrowers in its capacity as the administrator of the Loan, including the right to enforce the Loan Agreement by filing suit.

54.     Additionally, the Participants each may enforce Borrowers' obligations under the Loan Documents by virtue of the Participants' purchase of interests in the Loan.

55.     Additionally, the Participants each may enforce the Loan Documents against Borrowers as assignees of the Loan Agreement, other agreements evidencing Borrowers' obligations under the Loan, and other documents related to the Loan.

56.     Additionally, the Participants each may enforce Borrowers' obligations under the Loan Documents, regardless of any claims or defenses that Borrowers may assert against Aleritas, because the Participants are intended beneficiaries of those agreements, as evidenced by paragraph 6 of the Loan Agreement.

57.     Additionally, Borrowers should be estopped from challenging the Participants' right to protect their interests in the Loan by Borrowers' agreements in paragraph 6 of the Loan Agreement.

### COUNT ONE: BREACH OF CONTRACT
### (Union One Insurance Agency, LLC and Nevada Investment Partners, LLC)

58.     Plaintiffs incorporate the allegations in the preceding paragraphs of this Complaint.

59.     The Loan Documents were supported by consideration and are otherwise legally valid agreements that the Participants may enforce against Borrowers.

9

WA 2562268.4

60.     Paragraphs 4(a)(i) and 4(c) of the Loan Agreement require Borrowers to provide certain information, including annual, quarterly, and monthly financial statements, to their lender.

61.     Borrowers materially breached those provisions of the Loan Agreement by failing to provide the required information since about September 2008.

62.     Paragraph 8(a) of the Loan Agreement provides that any failure by Borrowers to make payments on the Loan when they are due under the promissory note evidencing the Loan constitutes an event of default.

63.     Borrowers materially breached that provision of the Loan Agreement by failing to make one or more payments on the Loan when they were due, including (but not limited to) a payment on the Loan of $35,633.58 that was due on January 15, 2009.

64.     Paragraph 8(c) of the Loan Agreement provides that the insolvency of any of the Borrowers constitutes an event of default.

65.     Borrowers materially breached that provision of the Loan Agreement when The Harris Agency, LLC filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code on January 20, 2009.

66.     Paragraph 8(m) of the Loan Agreement provides that the filing of a certain stipulated judgment constitutes an event of default.

67.     Borrowers materially breached that provision of the Loan Agreement when that stipulated judgment was filed on about December 3, 2008.

68.     Paragraph 8(n) of the Loan Agreement provides that the occurrence of "any event or condition" that, in the reasonable judgment of Borrowers' lender, is reasonably likely to adversely affect Borrowers' ability to comply with financial covenants stated in the Loan Documents, or the rights and remedies of Borrowers' lender, constitutes an event of default.

WA 2562268.4

69.     Borrowers materially breached that provision of the Loan Agreement when The Harris Agency, LLC filed for bankruptcy, when the stipulated judgment was filed, and by failing to maintain required revenues and earnings.

70.     Paragraphs 31(b) and 31(c) of the Loan Agreement require Borrowers to maintain specified revenues and earnings.

71.     Borrowers materially breached those provisions of the Loan Agreement by failing to maintain required revenues and earnings.

72.     All conditions precedent to the Participants' right to enforce the Loan Documents against Borrowers have been satisfied.

73.     The Participants have been damaged by Borrowers' breach of the Loan Documents.

74.     The Loan Documents provide that the maturity date of Borrowers' obligations under those agreements may be accelerated if Borrowers default on any of those obligations.

75.     Paragraph 16 of the Loan Agreement states that the prevailing party in any lawsuit "brought with respect to the Agreement" may recover its costs incurred with respect to the action, including reasonable attorneys' fees.

WHEREFORE, the Banks ask the Court for a judgment in their favor against Borrowers for damages in the amount of the outstanding balance of the Loan, which is currently approximately $1.13 million, plus accrued interest, late fees, post-judgment interest as provided by law, the Banks' costs of bringing this action, their reasonable attorneys' fees, and any other relief that the Court deems just.

## COUNT TWO: DECLARATORY JUDGMENT
### (All defendants)

76.     Plaintiffs incorporate the allegations in the preceding paragraphs of this Complaint.

77.     The Banks purchased interests in the Loan and the Loan Documents from Aleritas.

WA 2562268.4

78.     The Banks did not acquire any obligations of Aleritas arising from other transactions between Aleritas and Defendants, nor were the Banks involved in any such transactions.

79.     Quivira Capital, LLC has never been known as, and is not the successor to, Aleritas.

80.     Kelly Drouillard has never been employed by, and is not an agent of, Aleritas.

81.     Defendants have brought claims—in *Archway Ins. Servs. v. Bank of Commerce & Trust*, No. 11-2403-KHV-DJW (D. Kan)—asserting that Plaintiffs are successors-in-interest to Aleritas and/or may be held liable for allegedly wrongful conduct by Aleritas.

82.     Thus, there is a justiciable controversy between Plaintiffs and Defendants.

WHEREFORE, Plaintiffs ask the Court to declare that they are not liable to Defendants for any allegedly unlawful conduct by Aleritas.

## COUNT THREE: REPLEVIN
### (Union One Insurance Agency, LLC and Nevada Investment Partners, LLC)

83.     Plaintiffs incorporate the allegations in the preceding paragraphs of this Complaint.

84.     The Loan was secured by collateral identified in the security agreement executed by Borrowers (collectively, "Collateral").

85.     The Collateral is specific personal property.

86.     Aleritas perfected its security interest in the Collateral by filing a UCC-1 financing statement on about September 27, 2007.

87.     Aleritas amended that financing statement on about February 27, 2008 to reflect the fact that it had changed its name.

88.     The Banks acquired Aleritas's security interest in the Collateral when they purchased interests in the Loan from Aleritas.

89.     By virtue of Borrowers' material breach of the Loan Agreement and one or more of the other Loan Documents, the Banks are entitled to possess the Collateral immediately.

WA 2562268.4

90.     The Banks' right of possession to the Collateral is superior to any such right held by Borrowers.

91.     Borrowers have wrongfully detained the Collateral, and continue to do so.

92.     The Banks have been damaged by Borrowers' wrongful possession of the Collateral.

WHEREFORE, the Banks ask the Court (a) to order Borrowers to surrender the Collateral to the Banks immediately; (b) to enter judgment in favor of the Banks against Borrowers for the value of the Collateral if it cannot be delivered to the Banks immediately; (c) to award damages to the Banks for Borrowers' wrongful detention of the Collateral, plus post-judgment interest as provided by law, the Banks' costs of bringing this action, their reasonable attorneys' fees, and any other relief that the Court deems just.

Plaintiffs request a trial in Kansas City.

Respectfully submitted,

SPENCER FANE BRITT & BROWNE LLP

/s/ Barry L. Pickens
Nathan A. Orr                    KS #20183
    norr@spencerfane.com
Barry L. Pickens                 KS #15822
    bpickens@spencerfane.com
J. Loyd Gattis                   KS #23510
    lgattis@spencerfane.com
1000 Walnut Street, Suite 1400
Kansas City, Missouri  64106-2140
(816) 474-8100
(816) 474-3216 (facsimile)

*Attorneys for plaintiffs Kendall State Bank,*
*Bank of Commerce and Trust Company, First*
*United Bank and Trust, Garden City State Bank,*
*Peabody State Bank, Quivira Capital, LLC, and*
*Kelly Drouillard*

13                                    WA 2562268.4

## CERTIFICATE OF SERVICE

On September 19, 2011, the foregoing was filed electronically using the Court's CM/ECF

system, which will notify all registered parties of this filing.

/s/ Barry L. Pickens
*Attorney for plaintiffs Kendall State Bank, Bank*
*of Commerce and Trust Company, First United*
*Bank and Trust, Garden City State Bank,*
*Peabody State Bank, Quivira Capital, LLC, and*
*Kelly Drouillard*

WA 2562268.4