**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **KENDALL STATE BANK, GARDEN CITY** ) | |
| **STATE BANK, PEABODY STATE BANK,** ) | |
| **FIRST UNITED BANK AND TRUST,** ) | |
| **THE BANK OF COMMERCE AND TRUST** ) | |
| **CO., QUIVIRA CAPITAL, LLC and KELLY** ) | |
| **DROUILLARD,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | |
| ) | **No. 10-2617-KHV** |
| **ARCHWAY INSURANCE SERVICES,** ) | |
| **LLC, NEVADA INVESTMENT** ) | |
| **PARTNERS, LLC and UNION ONE** ) | |
| **INSURANCE GROUP, LLC,** ) | |
| ) | |
| **Defendants,** ) | |
| ) | |
| _____ ) | |
| ) | |
| **ARCHWAY INSURANCE SERVICES, LLC,** ) | |
| **UNION ONE INSURANCE GROUP, LLC,** ) | |
| **NEVADA INVESTMENT PARTNERS, LLC,** ) | |
| **and TRINITY CAPITAL MANAGEMENT,** ) | |
| **LLC,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | |
| ) | **No. 11-2403-KHV** |
| **BANK OF COMMERCE AND TRUST,** ) | |
| **GARDEN CITY STATE BANK, PEABODY** ) | |
| **STATE BANK, KENDALL STATE BANK,** ) | |
| **FIRST UNITED BANK AND TRUST,** ) | |
| **KELLY DROUILLARD and QUIVIRA** ) | |
| **CAPITAL, LLC,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

This Memorandum and Order rules on a motion in Civil Action No. 10-2617-KHV, the first of two consolidated cases. In this case, defendants Union One Insurance Group, LLC, Nevada Investment Partners, LLC and Archway Insurance Services, LLC have asserted counterclaims against Kendall State Bank, Garden City State Bank, Peabody State Bank, First United Bank and Trust, The Bank of Commerce and Trust Co. and Kelly Drouillard. The counterclaims allege tortious interference with existing business relationships, fraud in the inducement and breach of contract. This matter is before the Court on Plaintiffs/Counterclaim Defendants' Motion To Dismiss Defendants' Counterclaims With Memorandum In Support Thereof (Doc. #55) filed on October 31, 2011. Plaintiffs assert that defendants' counterclaims must be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P., because they fail to state claims upon which relief can be granted. For the following reasons, the Court overrules the motion.

## Legal Standards

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint or counterclaim must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face. Id. at 679-80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether it states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id.; Hall v. Bellmon, 935 F.3d 1106, 1110 (10th Cir. 1991). Here, defendants bear the burden of framing

their counterclaims with enough factual matter to suggest that they are entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. Twombly, 550 U.S. at 556. Defendants make a facially plausible claim when they plead factual content from which the Court can reasonably infer that plaintiffs are liable for the misconduct alleged. Iqbal, 556 U.S. at 678. Defendants must show more than a sheer possibility that plaintiffs have acted unlawfully – it is not enough to plead facts that are "merely consistent with" liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. Iqbal, 556 U.S. at 678. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not "shown" – that the pleader is entitled to relief. Id. at 1950. The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008)).

### Facts

The counterclaim alleges the following facts:

Defendants Union One Insurance Group, LLC ("Union One") and Nevada Investment Partners, LLC ("NIP") entered into an agreement in 2007 to acquire the James Harris book of business from Brown & Brown for a purchase price of $5,250,000.00 ("the acquisition agreement"). Union One and NIP worked with Brooke Credit Corporation ("Brooke"), an insurance industry lender, to arrive at a

valuation of the business and obtain financing.[1]  Brooke represented itself as one of the largest lenders for the insurance industry and claimed to have expertise in providing financing to the industry.  Brooke advised that a multiplier of 1.7 times annualized revenue was an industry standard valuation method.

On August 27, 2007, Brooke committed to fund the acquisition agreement purchase price in three installments.  The first installment was to be in the amount of $2,625,000.00, payable at the closing. In January and October of 2008, Brooke would make additional payments of $1,312,500.00 each. Plaintiff Kelly Drouillard, a Brooke employee, negotiated the terms of the loan commitment.  In its commitment letter, Brooke agreed that the borrower would be The Harris Agency ("THA").  On August 31, 2007, however, Brooke added a requirement that Union One be included as a co-borrower.

On September 24, 2007, Brooke notified the borrowers that it had obtained a credit insurance policy to protect itself against loan default.  Brooke included the cost of the policy ($36,625.00) in the loan commitment terms.  Defendants have made numerous requests for confirmation and documentation of this insurance coverage, but the plaintiff banks that purchased the loan from Brooke have not provided it.

On September 28, 2007, Brooke made a loan of $2,924,125.00 to Union One, NIP and THA, pursuant to a commercial loan agreement and an addendum thereto, a promissory note and a security agreement along with an extension thereof (together "the loan documents").[2]  In or around January of 2008, Brooke notified Union One and NIP that despite its commitment, Brooke would not fund the

---

[1]       At some point, Brooke became known as Aleritas Capital Corporation.  None of the parties suggest that the name change is relevant to the claims or counterclaims in this lawsuit.

[2]       THA is not a party to this action.  Neither the counterclaim nor the amended complaint explicitly define its role.  An exhibit to the counterclaim indicates that in May of 2008, Union One, NIP and THA shared the same two co-managers.  Doc. #54-3.

second financing payment for the acquisition agreement unless several principals of the defendants personally guaranteed the loan. Those individuals declined Brooke's demand and defendants arranged other financing in the amount of $1,312,500.00 plus interest. Brooke then released Union One as an obligor on the note dated September 28, 2007, and the parties amended the loan documents to remove Union One as a borrower. Defendants made the second installment payment under the acquisition agreement in reliance on Brooke's release of Union One.

Around the end of October of 2008, approximately one year after THA had acquired the James Harris book of business, defendants first learned that the book of business generated approximately $1.7 million, and not the represented amount of $3.8 million. As a consequence, THA could not generate sufficient income to sustain itself or repay the loans. In January of 2009, THA filed for Chapter 11 bankruptcy as it was unable to make the third installment payment required by the acquisition agreement.

In September of 2008, Union One learned that Kendall State Bank had assumed the role of servicing the loan. As agent for the plaintiff banks,[3] in a purported attempt to exercise the banks' rights under K.S.A. § 84-9-607(a),[4] Kendall State Bank thereafter made demand upon customers and insurance companies doing business with Union One for payment of Union One's accounts receivable/commissions.

---

[3]      These include The Bank of Commerce and Trust Co., Garden City State Bank, Peabody State Bank and First United Bank and Trust.

[4]      K.S.A. § 84-9-607(a) is the provision of the Uniform Commercial Code which governs collection and enforcement by a secured party upon default.

### Analysis

Defendants assert three counts against certain plaintiffs.  In Count I, Union One asserts a claim for tortious interference with existing business relationships against Kendall State Bank, Garden City State Bank, Peabody State Bank, First United Bank and Trust and The Bank of Commerce and Trust Co. ("the banks").   Union One and NIP bring Count II for fraud in the inducement against Kelly Drouillard.  In Count III, Archway Insurance Services, LLC ("Archway") asserts a cause of action against the banks for breach of contract.  The banks and Drouillard move to dismiss the counterclaims in their entirety for failing to state a claim upon which relief can be granted.

**I.      Tortious Interference**

Union One alleges that the banks had no authority to collect the loan after the lenders released it as an obligor and removed it from the loan.  After Kendall State Bank began servicing the loan as agent for the other banks, it demanded that more than 125 customers and insurance companies doing business with Union One pay to Kendall State Bank any and all Union One accounts receivable/commissions.  Union One admits that Kendall State Bank was attempting to exercise the banks' collection rights under the Uniform Commercial Code, on account of the past due balance on the loan.  Union One asserts that the banks had no such rights, however, because Union One was not indebted after Brooke released it as an obligor.  Union One notified the banks that it objected to their collection attempts, but the banks mailed a second letter to its customers and business partners.  Union One alleges that the banks knew of these business relationships, and that Kendall State Bank's actions constituted tortious interference with existing business relationships.

To state a claim for tortious interference with an existing or prospective business relationship under Kansas law, Union One must plead facts supporting the following five essential elements: (1) the

existence of a business relationship or expectancy with the probability of future economic benefit to Union One; (2) knowledge of the relationship or expectancy by plaintiffs; (3) that except for the conduct of plaintiffs, Union One was reasonably certain to have continued in the relationship or realized the expectancy; (4) intentional misconduct by plaintiffs; and (5) damage suffered by Union One as a direct or proximate result of plaintiffs' misconduct.  Maxwell v. Sw. Nat'l Bank, 593 F. Supp. 250, 253 (D. Kan. 1984).  Plaintiffs contest the sufficiency of Count I on the first, third and fourth elements.

Plaintiffs interpret the first element to mean that the counterclaim must specifically identify which business relationships were harmed, citing Snyder v. American Kennel Club, 661 F. Supp.2d 1219, 1237-38 (D. Kan. 2009) and Bushnell Corp. v. ITT Corp., 973 F. Supp. 1276 (D. Kan. 1997). These cases are distinguishable.  In Snyder, the court ruled on a summary judgment motion and concluded that evidence of past contracts did not satisfy plaintiff's burden to show that it had ongoing or future business relationships.  661 F. Supp.2d at 1238 (record did not raise material question of fact regarding existing contracts or prospective business expectancies).  And in Bushnell, although the court granted defendant's motion for judgment on the pleadings, it did so because plaintiff alleged interference with contractual relations with customers and vendors but failed to allege the breach of any particular contract.  973 F. Supp. at 1288.

Here, Count I provides fair notice of what business relationships are involved.  Plaintiffs know the 125 Union One customers and insurance company partners that Kendall State Bank contacted to demand payment of Union One accounts receivable and commissions.  Union One has sufficiently pled the first element.

Plaintiffs next argue that Union One has not pled facts supporting its conclusory allegation that their conduct was the "but for" cause of its lost business.  They rely on dicta in Cohen v. Battaglia, 41

Kan. App.2d 386, 202 P.3d 87 (2009). <u>Cohen</u> held that a pleading satisfied the "but for" element when the court took as true the allegations and reasonable inferences therefrom. 41 Kan. App.2d at 400, 202 P.3d at 98. Here, Union One does not merely allege that plaintiffs were the "but for" cause of its damages; it specifically alleges the harmful misrepresentations that the demand letters made to Union One customers. From that allegation, the Court can reasonably infer that, but for the misrepresentations, Union One business relationships would not have been damaged. Union One has sufficiently pled the third element of tortious interference.

Finally, plaintiffs assert that Union One does not plead facts to support its conclusory allegation that they acted intentionally and maliciously. Under Kansas law, tortious interference claims are predicated upon malicious conduct. <u>Burcham v. Unison Bancorp, Inc.</u>, 276 Kan. 393, 425, 77 P.3d 130, 152 (2003). Plaintiffs suggest that, because Union One acknowledges that they sent the letters in a purported attempt to exercise their rights under the Uniform Commercial Code, the counterclaim does not allege malice. For purposes of this motion, the Court accepts as true the allegations that Union One was not obligated under the loan agreement when Kendall State Bank sent the demand letters and that those letters erroneously represented Union One's indebtedness. According to the counterclaim, plaintiffs misrepresented Union One indebtedness; Union One notified Kendall State Bank that the letters falsely advised that Union One had defaulted and had provided security on which Kendall State Bank could execute; and Kendall State Bank responded by sending a second letter to the customers and business partners of Union One. The counterclaim further alleges that plaintiffs identified the recipients of the information through improper use of financial information from Brooke and/or Aleritas, and that plaintiffs failed to act in a commercially reasonable manner by contacting companies who were not current clients of Union One and did not owe money to Union One, and by trying to collect money

which Union One did  not legally owe to plaintiffs.  Union One specifically alleges that plaintiffs acted intentionally, willfully and maliciously.

In determining whether plaintiffs' conduct is improper, the following factors should be considered:  (1) the nature of their conduct; (2) their motive; (3) the interests with which plaintiffs' conduct interfered; (4) the interests sought to be advanced by plaintiffs; (5) the social interests in protecting the freedom of action of plaintiffs and the contractual interests of defendant; (6) the proximity or remoteness of plaintiffs' conduct to the interference; and (7) the relations between the parties. Burcham, 276 Kan. at 425, 77 P.3d at 153.  Given the highly factual nature of this inquiry, the issues of plaintiffs' motives and the presence or absence of malice are typically questions for the jury.[5]  See generally Burrowwood Assocs., Inc. v. Safelite Glass Corp., 18 Kan. App.2d 396, 400-01, 853 P.2d 1175, 1179 (1993).  Union One has sufficiently pled the fourth – and every – element of tortious interference.

## II.     Fraud In The Inducement

As noted, Count II alleges fraud in the inducement.  Union One and NIP assert that while acting as an agent of Brooke, Drouillard misrepresented the appropriate valuation of the Harris book of business, the availability of credit insurance for financing the loan and services available from Brooke's Borrower's Assistance Plan.  Defendants allege that the representations were false, as the book of business was worth substantially less than she asserted, Brooke never obtained the credit insurance and the Borrower's Assistance Plan never rendered services to Union One and NIP.  Union One and NIP allege that they justifiably relied on her representations, however, because she was an agent of Brooke, a company which claimed to have expertise in financing for insurance companies.

---

[5]        Federal Rule of Civil Procedure 9(b) allows malice to be alleged generally.

Actionable fraud requires the following:  (1) a representation; (2) that is false; (3) that is material; (4) the speaker knows it is false or is ignorant of its truth; (5) the speaker intends that it be acted on; (6) the hearer is ignorant that the representation is false; (7) the hearer relies on the representation; (8) the hearer has a right to rely on it; and (9) the hearer is injured.  Tal v. Hogan, 453 F.3d 1244, 1263 (10th Cir. 2006) (citation omitted).  Failure to adequately allege any one of the nine elements is fatal to the fraud claim.  Id.  Thus, a fraud claim must set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.  Id.

Drouillard contends that Count II should be dismissed because it does not satisfy the particularity requirement of Fed. R. Civ. P. 9(b), it is based upon impermissibly conclusory allegations, it does not allege a specific false statement of existing material fact and defendants' reliance, if any, was not reasonable.

Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting fraud be pled with particularity.  Drouillard argues that defendants have not set forth the time, place and specific contents of the false representation.  The Court disagrees.  Considering that the purpose of Rule 9(b) is to afford fair notice of the claims and the facts upon which they are based, see Koch v. Koch Indus., Inc., 203 F.3d 1202, 1236 (10th Cir. 2000), Count II adequately advises Drouillard what false representations she made while acting as Brooke's agent to negotiate financing for the Harris book of business.

Drouillard next argues that the fraud allegations do not satisfy the general plausibility pleading standard of Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Specifically, she argues that defendants do not allege that she made a representation recklessly, with knowledge that it was false or with the intention of inducing defendants to act.  The

-10-

Court disagrees.  Defendants have satisfied the pleading requirement of Rule 9(b) and met the plausibility standard:  Drouillard is on notice of exactly what actions she took that defendants justifiably relied on in going forward with the acquisition agreement.

Drouillard's third argument is that Count II does not allege a specific false statement of existing and material fact.  For the reasons set forth above, the Court disagrees.

Finally, Drouillard argues that any reliance on her statements was unreasonable as a matter of law.  She posits that Union One and NIP could have hired consultants and performed their own investigation with respect to each alleged representation, and that their failure to do so was not reasonable.  The Court rejects this argument.  Union One and NIP relied on Brooke, which represented itself as one of the largest lenders for the insurance industry and claimed to have expertise in providing financing to that industry.  Count II of the counterclaim is certainly sufficient to state a claim for relief under Rule 12(b)(6).

## III.    Breach Of Contract

As noted, Count III alleges breach of contract by plaintiff banks.  Archway alleges that the commercial loan agreement of  September 28, 2007 and addendum thereto ("the loan agreement"), as amended in May of 2008 ("the amendment"),[6] named Archway as a secured party to the loan agreement and gave it a one-third security interest in the collateral because Archway structured the transaction for the second installment payment to Brown & Brown under the acquisition agreement.  The banks later foreclosed and obtained $2,000,000.00 through the sale of THA, and Archway asserts that it is entitled to one-third of the proceeds as a secured party under the loan agreement and the amendment.  The banks

---

[6]        The amendment was signed by Brooke d/b/a Aleritas, Union One, NIP and THA.  <u>See</u> Doc. #54-3 at p. 3.

have not honored Archway's secured party status and Archway alleges breach of contract.

The elements of a breach of contract claim are as follows:  (1) the existence of a contract between the parties; (2) consideration; (3) defendants' performance or willingness to perform in compliance with the contract; (4) plaintiffs' breach of the contract; and (5) damage on account of the breach.  Britvic Soft Drinks Ltd. v. ACSIS Techs., Inc., 265 F. Supp.2d 1179, 1187 (D. Kan. 2003).  An agreement to modify a contract must be supported by independent consideration.  Marsh v. Coleman Co., Inc., 774 F. Supp. 608, 616 (D. Kan. 1991).

Plaintiff banks contend that Count III must be dismissed because (1) Archway does not and cannot claim that independent consideration supported the amendment to the loan agreement and (2) the allegation is implausible because the addendum does not give Archway a right to one third of the proceeds of the sale of collateral.  Much of the argument goes beyond the issue at hand – whether Archway has stated a breach of contract claim which can withstand a Rule 12(b)(6) motion.[7] Specifically, plaintiff banks offer no explanation as to why Archway, as a secured party, would have to show that the amendment was supported by consideration to assignees.  The contract itself states that the parties agreed to the amendment "[f]or good and valuable consideration[,] the sufficiency and receipt of which are acknowledged."  Doc. #54-3 at 1.  Moreover, it is certainly plausible that the consideration which Archway avers – making a payment of more than $1,000,000.00 and foregoing a $100,000.00 fee – is sufficient to support a security interest in the collateral.

Plaintiff banks' second argument raises a different issue, the adequacy of Archway's factual allegation that it is entitled to one-third of the proceeds of the sale of collateral.  Archway's response

---

[7]    The Court is aware that plaintiffs have filed a motion for summary judgment on each of the counterclaims (Doc. #91 filed August 6, 2012), but that they did not thereby waive their "right" to a ruling on the instant motion.

does not address this issue.  The Court deduces from the allegations that (1) on September 28, 2007, Brooke made a loan of $2,924,125.00 to Union One, NIP and THA, pursuant to the loan documents, (2) Archway made the second payment under the acquisition agreement in the amount of $1,312,500.00 plus interest, and (3) Archway's claim to one-third of the proceeds is supported by the roughly two-to-one ratio of these funds.  Even if it is lacking in merit, this claim is not wholly implausible. Accordingly, Archway has sufficiently alleged facts to support its claim.

**IT IS THEREFORE ORDERED** that <u>Plaintiffs/Counterclaim Defendants' Motion To Dismiss Defendants' Counterclaims With Memorandum In Support Thereof</u> (Doc. #55) filed on October 31, 2011 be and hereby is **OVERRULED**.

Dated this 29th day of August, 2012 at Kansas City, Kansas.

<u>s/  Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge

-13-